UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| JULIE A. SU, <br> Acting Secretary of Labor, <br> United States Department of Labor, <br><br> *Plaintiff*, <br><br> v. <br><br> ARISE VIRTUAL SOLUTIONS INC., <br><br> *Defendant*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br> Civil Action No. _____ <br><br><br><br><br><br><br> **COMPLAINT** <br> **(Injunctive Relief Sought)** |

Plaintiff Julie A. Su, Acting Secretary of Labor, United States Department of Labor, brings this action under § 217 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* (FLSA), to enjoin and restrain Defendant Arise Virtual Solutions Inc. (Arise) from willfully violating 29 U.S.C. §§ 215(a)(2) and 215(a)(5), including: (a) the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to Arise's employees and (b) the restraint of any failure to make, keep, and preserve such records of the persons employed by Arise and of the wages, hours, and other employment conditions and practices maintained by Arise; and to recover unpaid minimum wages and overtime compensation, and an award of an equal amount as liquidated damages, owed to certain employees of Arise, who, at minimum, include the individuals listed in the attached Appendix A, under 29 U.S.C. § 216.

## INTRODUCTION

1. Arise provides remote call center services to its clients, many of which are Fortune 500 companies. To provide these services to its clients, Arise has recruited, engaged, and trained

a nationwide workforce consisting of tens of thousands of workers, which Arise identifies as "Service Partners[1]" and/or "Agents[2]" and classifies as independent contractors.

2. Arise provides voice, email, and chat customer service, and technical and sales support to its corporate clients, which is achieved through the labor of Arise's Service Partners and Agents.

3. Before any work can be performed, Service Partners and Agents must register on Arise's internet platform: Service Partners register as incorporated business entities or sole proprietorships as required by Arise, while Agents register by joining Service Partners that are already established on the platform (again, as required by Arise). However, these Service Partners and Agents are not in business for themselves, and are economically dependent for work on Arise, making them employees under the FLSA. The Service Partners and Agents are vital to Arise's ability to fulfill its contractual obligations to its prestigious clients; Arise cannot perform under its client contracts without the workers that take the calls and answer the e-mails.

4. Arise has bolstered its customer service workforce by misclassifying at least 22,000 of these workers as independent contractors and reaping the benefits by knowingly and recklessly disregarding the FLSA by failing to pay the required minimum wage and overtime rates for all hours worked—including time spent attending and studying for mandatory training and certification courses that last for weeks—and shifting the burden of expenses for equipment, fees, and training from itself to these workers.

5. Although these workers' economic dependency entitles them to the protections guaranteed by the FLSA, Arise's dispute resolution policy has kept their potential FLSA claims

---

[1] Although Arise currently labels these workers as Service Partners, they have gone by many names during the past decade, including "Independent Businesses," "Independent Business Owners," and "Virtual Services Corporations."
[2] Like the Service Partners, the Agents have undergone many name changes and were previously called "Customer Support Professionals," "Client Support Professionals," and "Arise Certified Professionals."

hidden from public sight by circumventing federal court adjudication: Arise requires all Service Partners and Agents to sign mandatory arbitration agreements and class or collective action waivers, thereby relinquishing their right to seek relief against Arise for wage violations in court, or as a member of a class.

6. For these reasons, the Secretary initiates this lawsuit to rectify Arise's willful misclassification of at least 22,000 of its employees as independent contractors and prevent Arise from further evading the requirements of the FLSA.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under 29 U.S.C. §§ 216 and 217, and 28 U.S.C. §§ 1331 and 1345, to enjoin violations of the FLSA, restrain the withholding of back wages due under the FLSA, and award additional amounts equal to back wages due as liquidated damages.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(1).

## DEFENDANT

9. Arise is a Delaware corporation that maintains its principal place of business at 3450 Lakeside Drive, 6th Floor, Miramar, Florida, 33027, within this Court's jurisdiction. Arise provides customer service support to corporate clients and, to do so, employs Service Partners and Agents that are located throughout the United States.

## ARISE IS AN ENTERPRISE ENGAGED IN COMMERCE

10. At all relevant times, Arise engaged in related activities performed either through unified operation or common control for a common business purpose, which constitutes an enterprise under 29 U.S.C. § 203(r).

11. These activities included providing customer service support, including email, voice, and chat customer service, and technical and sales support to its clients, in furtherance of Arise's business purpose, under 29 U.S.C. § 203(r).

12. At all relevant times, Arise employed employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce, such as computers and accessories, including headsets, keyboards, and monitors, cleaning products, and office equipment.

13. At all relevant times, Arise had an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

14. Therefore, Arise is an enterprise engaged in commerce or in the production of goods for commerce, under 29 U.S.C. § 203(s)(1)(A).

**SERVICE PARTNERS AND AGENTS ARE EMPLOYEES UNDER THE FLSA**

15. Arise contracts with high-profile corporate entities (clients), such as Disney, Dick's Sporting Goods, Home Depot, and Carnival Cruise Line, looking to outsource customer, technical, and sales support services at a low cost.

16. To meet the demands of its clients, Arise uses customer service representatives, known as Service Partners and/or Agents, who provide the customer support services that Arise is contractually obligated to deliver to its clients.

17. These Service Partners and Agents provide the customer support services to Arise's clients through its internet platform, where they must go to access the customer care opportunities that Arise makes available (Opportunity Announcements).

18. Arise makes these opportunities available at its sole discretion, and the Service Partners and Agents cannot create such opportunities on their own.

19. To entice Service Partners and Agents to work for it, Arise boasts the ability to "become your own boss" and "operate a home-based business."

20. As an initial step, Arise requires the Service Partners and Agents to register on its platform and either form an incorporated business or sole proprietorship or associate themselves with an existing incorporated business on Arise's platform.

21. Upon information and belief, the workers who register as Service Partners do not typically have incorporated businesses before they register with Arise.

22. After the registration is complete, and access to Arise's platform is granted—but before they can access the Opportunity Announcements to perform work for Arise's clients—Arise requires the Service Partners and Agents to complete a series of assessments, including a voice assessment and an equipment compatibility assessment, undergo drug screening, and pay for and pass a background check that can cost up to $30.00, which Arise administers.

23. Any start-up costs associated with these assessments are paid by Service Partners and Agents, including the costs to purchase equipment that meets Arise's stringent System and Equipment Policy.

24. Arise's System and Equipment Policy contains a detailed list of PC specifications that includes minimum requirements for CPU speed, hard drive space capacity, memory capacity, operating system software, standard connection and speed, latency threshold, monitor resolution and capability, and USB port capability.

25. Also, Arise's System and Equipment Policy requires accessories, such as a hardwired USB headset with phone quality audio, a hard-wired telephone and headset, hard-wired

broadband internet service, hard-wired telephone service to a router/model device or wall outlet, and hardwired keyboard and mouse, as well as software requirements for web browsers and security.

26. Additionally, Arise's clients can impose equipment and accessory requirements that go above and beyond those provided in Arise's System and Equipment Policy, which requirements Arise imposes on the Service Partners and Agents.

27. To comply with Arise's equipment and accessory requirements, Service Partners and Agents can spend anywhere from $200.00 to $1,500.00 before performing work for Arise's clients.

28. Once Arise grants the Service Partners and Agents access to the Opportunity Announcements and permits them to select an opportunity, Arise requires these workers to complete and pass certification courses for each client, which are taught by Arise employees and delivered through Arise's platform, where they learn about the client's expectations, call types, and how best to deliver the customer support services that Arise strives to provide to the client.

29. While attending Arise's mandatory, client-specific training courses that can last an average of three to eight weeks, Service Partners and Agents are not compensated and are required to pay Arise an attendance fee that costs between $9.99 and $199.99.

30. During these weeks of unpaid training, Service Partners and Agents attend courses and complete required, self-paced homework assignments, and they must pass the courses before Arise permits them to perform work for its clients.

31. No prior customer service experience or skill is needed or required by Arise to pass these courses or provide customer support services to Arise's clients.

32. For example, these mandatory training courses are required by each client and are not transferable from client to client.

33. When Service Partners and Agents pass the courses, they must sign a Master Services Agreement (MSA) with Arise before Arise permits them to provide customer support services to Arise's clients.

34. This MSA provides that it can be terminated by either party, but can be unilaterally amended by Arise at any time.

35. Arise requires Service Partners and/or Agents to sign an "Acknowledgement and Waiver Agreement," which contains a class action waiver and mandatory arbitration agreement.

36. Also, Arise requires Service Partners and/or Agents to sign a Non-Disclosure Agreement, which prohibits them from disclosing any information Arise deems confidential.

37. When Arise deems that Service Partners and Agents are ready and eligible to begin work for one of its clients, they must sign another agreement, known as a Statement of Work (SOW), which governs the work of the Service Partners and Agents for Arise's client, including the rate of pay.

38. Arise and the client determine the hourly rates payable to Service Partners and Agents for the work, and these rates are not open to negotiation by the Service Partners or Agents.

39. Arise also charges each Service Partner and Agent a mandatory bi-monthly "Platform Usage Fee" of $19.75, which must be paid to access the work opportunities that Arise has with its clients.

40. The SOW typically runs for 90 days and may be unilaterally terminated by Arise if the client terminates its agreement with Arise, or it may be terminated by either party for the reasons stated in the SOW.

41. Once the SOW and all the other required agreements are signed, Service Partners and Agents are permitted to access Arise's internet platform and claim work opportunities, which Arise offers in 30-minute intervals, and which are open on a first come, first serve basis, once per week.

42. While performing customer support services for Arise's clients, Service Partners and Agents are monitored and receive performance ratings from Arise personnel who are known as "Quality Assurance Performance Facilitators (QAPFs)."

43. Arise directs the QAPFs to monitor and enforce the performance metrics that are established by its clients and provide feedback to the workers on areas that Arise determines require improvement.

44. To enforce these directives from Arise, the QAPFs listen to and score calls between Service Partners and Agents and customers.

45. Service Partners and Agents receive lower performance ratings if they log on to Arise's portal late, or disconnect from the portal before the client's designated schedule.

46. Arise's QAPFs also assist Service Partners and Agents with technical support and issues that need to be escalated.

47. Additionally, the QAPFs hold mandatory virtual meetings and chats with Service Partners and Agents to provide additional training beyond the client certification courses.

48. Arise uses the performance ratings to determine which Service Partners and Agents receive the earliest access to the work opportunities that it makes available: the higher the ratings, the earlier the access is granted.

49. Ultimately, Arise may disallow low-rated performers from providing customer support services to the clients.

50. Arise requires the Service Partners and Agents to meet a minimum threshold for hours worked each week, so the ability to access the schedules at the earliest possible time is crucial to meeting this requirement.

51. If there are no time slots available when they access the schedule, Service Partners and Agents must wait until more slots open, to ensure they meet their minimum weekly thresholds.

52. Arise's scheduling system creates the appearance that the Service Partners and Agents are free to "set their own schedules;" yet, these stringent parameters and controls that Arise imposes (including controlling the available opportunities, access to the schedule, the order in which Service Partners and Agents may access the schedule, and the minimum number of hours that must be worked) make this "freedom" illusory.

53. As a result of the conduct described in Paragraphs 15-52, Arise willfully misclassified the Service Partners and Agents, who, as a matter of economic reality are economically dependent on Arise for work and are employees covered by the FLSA, including the FLSA's minimum wage, overtime pay, and recordkeeping provisions.

**ARISE VIOLATED THE FLSA'S MINIMUM WAGE PROVISIONS**

54. Since at least September 23, 2019, through September 22, 2021, and continuing after September 22, 2021, Arise willfully and repeatedly violated, and continues to violate, 29 U.S.C. §§ 206 and 215(a)(2) by employing employees, including Service Partners and Agents, in an enterprise engaged in commerce or in the production of goods for commerce and failing to pay such employees the applicable minimum hourly rate for all hours worked.

55. As a result of the conduct described in Paragraphs 15-52, Arise failed to pay the Service Partners and Agents identified in the Appendix A, as well as other employees that are not yet known to the Secretary, the applicable minimum hourly rate for the time spent attending client-

specific, mandatory training courses that last for at least three weeks and up to eight weeks, including the time spent performing mandatory, self-paced course work outside of the virtual classroom and hands-on training that includes handling customer service calls and providing customer support to Arise's clients.

56.     As a result of the conduct described in Paragraphs 15-52, Arise violated, and continues to violate, 29 U.S.C. §§ 206 and 215(a)(2), by requiring the Service Partners and Agents identified in the Appendix A, as well as other employees that are not yet known to the Secretary, to pay the costs for employment expenses that were primarily for Arise's benefit, such as assessments, background checks, equipment, accessories, and training courses.

## ARISE VIOLATED THE FLSA'S OVERTIME PAY PROVISIONS

57.     Since at least September 23, 2019, through September 22, 2021, and continuing after September 22, 2021, Arise willfully and repeatedly violated, and continues to violate, 29 U.S.C. §§ 207 and 215(a)(2), by employing employees, including Service Partners and Agents, in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than 40 hours without compensating such employees for their employment in excess of such hours at rates not less than one and one-half times the regular rates at which they were employed.

58.     As a result of the conduct described in Paragraphs 15-52, Arise paid the Service Partners and Agents identified in the Appendix A, as well as other employees that are not yet known to the Secretary, on a per call basis, in 30-minute intervals and failed to pay them at the applicable overtime rate for hours worked over 40 in a workweek when the employees worked more than 40 hours in a workweek.

## ARISE VIOLATED THE FLSA'S RECORDKEEPING PROVISIONS

59. Since at least September 23, 2019, through September 22, 2021, and continuing after September 22, 2021, Arise willfully and repeatedly violated, and continues to violate, 29 U.S.C. §§ 211(c) and 215(a)(5), and 29 C.F.R. § 516, by failing to make, keep, and preserve adequate and accurate records of the persons employed by it and of the wages, hours, and other conditions and practices of employment maintained by it, as required.

60. As a result of the conduct described in Paragraphs 15-52, Arise failed to keep and preserve payroll records for all employees for at least three years, including employees' full names, home addresses, dates of birth, sex, occupations, time and day of the start of their workweek, regular hourly rates of pay, hours worked each day and each workweek, total weekly straight time earnings, total weekly overtime premium pay, total additions to or deductions from wages, total wages paid per pay period, and dates of payments and periods covered by payment, as required under 29 C.F.R. §§ 516.2(a) and 516.5(a).

## ARISE'S FLSA VIOLATIONS WERE WILLFUL

61. Arise's violations of the FLSA identified in Paragraphs 54-60 were willful within the meaning of 29 U.S.C. § 255(a) because Arise knowingly and recklessly disregarded the provisions of the FLSA.

62. The Wage and Hour Division, United States Department of Labor (WHD), previously investigated Arise for the period of February 24, 2008, through February 23, 2010, to determine if Arise was misclassifying its Agents (previously known as Arise Certified Professionals) as independent contractors.

63. The investigation concluded on February 24, 2012.

64. WHD determined the Agents were employees of Arise and misclassified as independent contractors, and back wages were owed for violations of §§ 206 and 207 of the FLSA.

65. Arise refused to pay the back wages owed for the misclassified Agents and refused future compliance with the FLSA.

66. In 2013, Arise settled a class-action lawsuit brought by Plaintiffs and Class Representatives Sandra Perry, Armakia Mariner-Reed, and Patryce Counts, and agreed to pay $1,245,000.00 to 158 Class Members who alleged violations of California's minimum wage and overtime laws as a result of Arise misclassifying them as independent contractors.

67. Upon information and belief, Arise no longer permits California residents to register on Arise's platform for work, because of the class-action lawsuit brought by Plaintiffs Sandra Perry, Armakia Mariner-Reed, and Patryce Counts.

68. In 2015, an Arbitrator entered an Interim Award in favor of Ayub Abdul-Haqq, a Service Partner who had six individual Agents working for Arise in association with his business entity. The Arbitrator applied the economic reality test and determined that Arise misclassified him as an independent contractor and that he was an employee of Arise under the FLSA and entitled to an award of back wages and liquidated damages as a result of Arise's misclassification and failure to pay him wages owed under the FLSA.

69. In 2015, an Arbitrator entered an Interim Award in favor of Tami Pendergraft, an Agent who worked for Arise. The Arbitrator determined that Arise misclassified her as an independent contractor and that she was an employee of Arise under the FLSA and entitled to an award of back wages and liquidated damages as a result of Arise's misclassification and failure to pay her wages owed under the FLSA.

70. On January 19, 2022, the District of Columbia filed a lawsuit against Arise and Comcast Cable, as joint employers, alleging violations of the District's minimum wage, overtime pay, and sick leave requirements by misclassifying at least 180 Agents who reside in the District of Columbia as independent contractors.

71. The District of Columbia's lawsuit against Arise is ongoing.

72. Upon information and belief, Arise no longer permits residents of the District of Columbia to register on its platform for work as a result of the District of Columbia's pending litigation against Arise for alleged violations of its labor laws.

73. Despite these many challenges to Arise's unlawful wage-payment practices and investigations into Arise's misclassification scheme, Arise refuses to classify these workers as employees and continues to manipulate its business model to further evade the FLSA's requirements.

## TOLLING AGREEMENTS

74. The Secretary and Arise entered into four Tolling Agreements to toll the statute of limitations for the Secretary to initiate legal proceedings resulting from its investigation into Arise's compliance with the FLSA.

75. According to these Tolling Agreements, the statute of limitations was tolled from August 04, 2022, until February 24, 2023.

## PRAYER FOR RELIEF

Wherefore, cause having been shown, the Secretary prays for judgment against Arise providing the following relief:

(1) For an injunction issued under 29 U.S.C. § 217, permanently enjoining and restraining Arise, its officers, agents, servants, employees, and all persons in active concert or participation

with Arise who receive actual notice of any such judgment, from violating 29 U.S.C. §§ 215(a)(2) and 215(a)(5); and

(2) For an Order issued under 29 U.S.C. § 216 finding Arise liable for unpaid minimum wage and overtime compensation, as well as an award of an equal amount as liquidated damages, due to:

(a) Arise's current and former employees listed in the attached Appendix A for the period from at least September 23, 2019, through September 22, 2021;

(b) Arise's current and former employees listed in the Appendix A for violations continuing after September 22, 2021; and

(c) Arise's current and former employees presently unknown to the Secretary for the period covered by this Complaint, who may be identified during this litigation and added to the Appendix A; or

(3) In the event liquidated damages are not awarded, for an injunction issued under 29 U.S.C. § 217 enjoining and restraining Arise, its officers, agents, servants, employees, and all persons in active concert or participation with Arise from withholding the amount of unpaid minimum wages and overtime compensation found due to Arise's employees for the period covered by this Complaint and prejudgment interest computed at the underpayment rate established by the Secretary of the Treasury under 26 U.S.C. § 6621; and

(4) For an Order granting such other and further relief as may be necessary and appropriate, including costs of this action.

Respectfully submitted on June 29, 2023.

| | |
|---|---|
| Address: | SEEMA NANDA<br>Solicitor of Labor |
| Office of the Solicitor<br>U.S. Department of Labor<br>61 Forsyth Street, S.W.<br>Room 7T10<br>Atlanta, GA 30303 | TREMELLE I. HOWARD<br>Regional Solicitor<br><br>JEREMY K. FISHER<br>Wage and Hour Counsel |
| (404) 302-5449 (Phone)<br>(404) 302-5463 (Phone)<br>(678) 237-0617 (Phone)<br>(404) 302-5438 (Fax) | */s/ Emma L. Lomax*<br>EMMA L. LOMAX<br>Trial Attorney<br>Special Bar No. A5502994 |
| lomax.emma.l@dol.gov<br>latterell.richard.a@dol.gov<br>stratton.melanie.a@dol.gov<br>atl.fedcourt@dol.gov | */s/ Richard A. Latterell*<br>RICHARD A. LATTERELL<br>Trial Attorney<br>Special Bar No. A5502891<br><br>*/s/ Melanie A. Stratton*<br>MELANIE A. STRATTON<br>Trial Attorney<br>Special Bar No. A5502467<br><br>*Counsel for Acting Secretary of Labor,*<br>*United States Department of Labor* |
| June 29, 2023 | |
| SOL Case No. 22-00153 | |