UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:23-CV-61246-MIDDLEBROOKS/AUGUSTIN-BIRCH

JULIE A. SU, ACTING
SECRETARY OF LABOR,

    Plaintiff,

v.

ARISE VIRTUAL SOLUTIONS, INC.,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO COMPEL

The Honorable Donald M. Middlebrooks, United States District Court Judge, referred discovery motions in this case to the undersigned United States Magistrate Judge. DE 43. The case now comes before the Court on the parties' Motions to Compel. DE 60; DE 61. The Motion to Compel of Defendant Arise Virtual Solutions, Inc. is fully briefed at docket entries 60, 63, and 64. Plaintiff Julie A. Su, Acting Secretary of Labor, United States Department of Labor, filed a Declaration of Jessica Looman, Administrator of the Wage and Hour Division, at docket entry 74-1. In addition, Plaintiff filed documents under seal for *in camera* review at docket entries 80 and 81. Plaintiff's Motion to Compel is fully briefed at docket entries 61, 65, and 66. The Court held a hearing on the Motions to Compel on May 7, 2024, via video teleconference. The Court has carefully considered the parties' briefing, the arguments that counsel made during the hearing, and the record and is otherwise fully advised in the premises. For the reasons set forth below, both Motions to Compel are **GRANTED IN PART AND DENIED IN PART**.

## I. Background

In this case brought under the Fair Labor Standards Act ("FLSA"), Plaintiff alleges that Defendant "provides remote call center services to its clients" using "a nationwide workforce consisting of tens of thousands of workers, which [Defendant] identifies as 'Service Partners' and/or 'Agents' and classifies as independent contractors." DE 1 ¶ 1 (footnotes omitted). Plaintiff further alleges that Defendant "misclassif[ied] at least 22,000 of these workers as independent contractors" and failed to pay them minimum and overtime wages as required for employees under the FLSA. *Id.* ¶ 4. Appendix A to the Complaint lists a total of 22,359 purportedly misclassified workers by name. DE 1-2. Plaintiff seeks an injunction restraining Defendant from violating the FLSA and seeks an order requiring Defendant to pay the workers listed in Appendix A the minimum and overtime wages and liquidated damages they are due. DE 1 at 13–14.

## II. Defendant's Motion to Compel

Defendant raises two issues in its Motion to Compel. First, Defendant contends that Plaintiff has not produced certain documents that deposition testimony revealed are in existence. Second, Defendant contests redactions that Plaintiff placed on numerous documents based on the deliberative process privilege and the informer's privilege.

### A. Documents Revealed at Deposition

Defendant asserts that, during a deposition, Wage and Hour Investigator Jane Pyne revealed the existence of certain documents that would fall within Defendant's requests for production but that Plaintiff has failed to produce. DE 60 at 1–2. Defendant lists seven categories of unproduced documents in its Motion to Compel. *See id.* During the May 7 hearing, the parties informed the Court that they had resolved their dispute as to categories 1 and 5–7. Therefore, Defendant's request to compel the documents contained in categories 1 and 5–7 is denied as moot.

Category 2 of the unproduced documents is "Emails between Ms. Pyne and other [Wage and Hour Division] officials about the facts and substance of the 2021–2022 Arise investigation." *Id.* at 1. During the hearing, Defendant acknowledged that Plaintiff has produced some emails but stated that it is unable to discern whether production is complete because the emails are heavily redacted. Defendant stated that the redaction issues must be resolved for it to determine whether Plaintiff has withheld emails. At this juncture, Defendant's request to compel the emails contained in category 2 is denied without prejudice.

Category 3 of the unproduced documents is "Internal [Department of Labor] emails sent between a March 21, 2011 letter to Arise, and a follow-on letter dated February 27, 2012." *Id.* During the hearing, Plaintiff explained that any emails not already produced to Defendant likely no longer exist, having been destroyed due to their age. Defendant maintained that Plaintiff should search "email files" and "back-up tapes" to confirm that the emails no longer exist.

In the Court's Order resolving the parties' prior round of Motions to Compel, the Court agreed with Defendant that it should not be required to produce documents from a time period before January 29, 2020, that date being the date from which back wages may be recoverable in this litigation. DE 50 at 7–8. The Court ruled that, while documents from a time period before that date may have relevance to certain issues in the case, requiring the production of documents from years into the past is disproportional to the needs of the case. *Id.* at 8; *see* Fed. R. Civ. P. 26(b)(1) (defining the scope of discovery to be "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). For those same reasons, requiring Plaintiff to scour her records for emails from dates even further in the past (2011 to 2012) is disproportional to the needs of the case. Defendant's request to compel the emails contained in category 3 is denied.

Finally, category 4 of the unproduced documents is "Notices that [the Department of Labor] issued to workers at the close of the 2010–2012 Arise investigation." DE 60 at 1. During the hearing, Defendant stated that it does not believe these notices exist. Plaintiff represented to the Court that no notices exist because, if they ever existed in the first place, they have been destroyed due to their age. Based on that representation, Defendant's request to compel the notices contained in category 4 is denied.

### B. Privilege Redactions

Defendant maintains that Plaintiff produced numerous documents that were partially or entirely redacted based on the deliberative process privilege and the informer's privilege. *Id.* at 2–3. Defendant challenges Plaintiff's assertions of privilege. *Id.* To assist the Court in evaluating the assertions of privilege, the Court ordered Plaintiff to file under seal for *in camera* review a sampling of the documents in dispute, providing both redacted and unredacted versions of the documents. DE 76. Plaintiff complied. *See* DE 80; DE 81. The Court has conducted a careful and thorough *in camera* review of those documents.

The Court required Plaintiff to file only a sampling of the documents in dispute because, as the Court understands from the parties, the entirety of the documents in dispute comprises many hundreds, if not thousands, of pages. Although many hundreds of pages are at issue, Defendant did not file its Motion to Compel asking the Court to intercede in this issue until approximately two and a half weeks before the discovery deadline. The Court is optimistic that, with the benefit of rulings as to the sampling of documents, the parties can work together in a professional and cooperative manner to resolve their disputes over the redactions in the remaining documents.

### 1. Deliberative Process Privilege

"To protect agencies from being forced to operate in a fishbowl, the deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and

deliberations comprising part of a process by which governmental decisions and policies are formulated." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (citation and quotation marks omitted) ("To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure."). "The purpose of this privilege is to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004).

The deliberative process privilege "distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not." *U.S. Fish & Wildlife Serv.*, 592 U.S. at 268. "A 'predecisional' document is one prepared in order to assist an agency decision-maker in arriving at his decision and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Moye*, 376 F.3d at 1277; *see also U.S. Fish & Wildlife Serv.*, 592 U.S. at 269 (stating that documents "are 'predecisional' if they were generated before the agency's final decision on the matter"). "A document is 'deliberative' if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thereby, undermine the agency's ability to perform its functions." *Moye*, 376 F.3d at 1278; *see also U.S. Fish & Wildlife Serv.*, 592 U.S. at 269 (stating that documents "are 'deliberative' if they were prepared to help the agency formulate its position").

The deliberative process privilege "requires different treatment for material reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other." *Fla. House of Representatives v. U.S. Dep't of Com.*, 961 F.2d 941, 947 (11th Cir. 1992) (quotation marks omitted) (stating that the privilege focuses on documents reflecting

advisory opinions and acknowledging that "the task of drawing a line between what is fact and what is opinion can at times be frustrating and perplexing"). "[T]he Supreme Court has held that factual information generally must be disclosed and materials embodying officials' opinions are ordinarily exempt from disclosure." *Moye*, 376 F.3d at 1278.

To evaluate Plaintiff's assertions of the deliberative process privilege, the Court reviewed the documents cited by Bates number in footnote 1 of Defendant's Motion to Compel, as these are documents that Defendant "specifically requests . . . be produced unredacted." *See* DE 60 at 2 n.1. The Court concludes that all of Plaintiff's redactions in those documents that are based on the deliberative process privilege are valid. The redacted material reflects Plaintiff's mental impressions, deliberations, opinions, and recommendations.

"The deliberative process privilege may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need."). A determination as to need is made flexibly on a case-by-case basis, balancing the competing interests and taking into account factors such as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees. *In re Sealed Case*, 121 F.3d at 737–38.

Defendant has not shown a particularized need for the redacted material that outweighs the reasons for the deliberative process privilege, as Defendant states only that it could use the material to support its defense. *See* DE 64 at 1–2. Should Plaintiff use a document containing a deliberative process privilege redaction at trial, Defendant is free to move to have an unredacted copy of the document produced. At this juncture, the Court will not order Plaintiff to remove the deliberative process privilege redactions in the documents reviewed *in camera*.

## 2. Informer's Privilege

The informer's privilege is "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.*

The informer's privilege is limited in scope. *Id.* at 60. "[W]here the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." *Id.*; *see also Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972) (explaining that "it is the *identity* of the informer which is protected, not the contents of his statement" (emphasis in original)).

To evaluate Plaintiff's assertions of the informer's privilege, the Court reviewed the documents attached as exhibits M, N, and O to Defendant's Motion to Compel. *See* DE 60-1 at 149–58. Being interview statements and intake forms, these documents likely are representative of many of the documents on which Plaintiff has placed informer's privilege redactions. The Court agrees that name, address, telephone number, email address, dates of employment, and name of company created[1] could "tend to reveal the identity of an informer." However, especially in light of the fact that this case involves more than 22,000 purportedly misclassified workers, the following information would not tend to reveal the identity of any particular individual and is not protected under the informer's privilege: date of interview with Plaintiff; the method by which an individual communicated with Plaintiff, such as by telephone, voicemail, email, or in person;

---

[1] According to Plaintiff, Defendant required Service Partners to "register as incorporated business entities or sole proprietorships." DE 1 ¶ 3.

descriptions of occupations and duties that lack any precision, such as "service partner" or "agent"; the age of an individual if lacking any precision, such as "21+"; wages; hours worked; the names of clients serviced; how an individual heard about Defendant; how much an individual paid for a training course; employee status (current or former); and the "Customer complainant," "permission," and "notification" information such as that found on docket entry 81-4 at 1. For documents where the informer's privilege is the only basis given for redacting that information, Plaintiff must remove the redactions of that information.

The informer's privilege is also limited by "fundamental requirements of fairness." *Roviaro*, 353 U.S. at 60. The purpose of the privilege—protecting the flow of information—must be balanced against a defendant's right to prepare his defense. *Id.* at 62. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way" and "the trial court may require disclosure." *Id.* at 60–61. Although *Roviaro* "was a criminal case, the balancing of interest test that it established has been applied to civil cases as well." *Hodgson*, 459 F.2d at 305. In a civil case, the interests to be balanced include the public's interest in efficient enforcement of the law, the informer's right to be protected against possible retaliation, and the defendant's need to prepare for trial. *Id.* It is "well-settled that the privilege does not override the government's duty to disclose the identity of witnesses who will testify at trial." *Perez v. L & J Farm Picking, Inc.*, No. 12-24426-CIV, 2013 WL 5446625, at *2 (S.D. Fla. Sept. 30, 2013).

At this stage of the litigation, the deadline for the parties to disclose their intended witnesses passed over a month ago, and trial is scheduled to begin in approximately two months. If an informer is an intended witness, the interests of the government and of the informer in preserving anonymity are minimal, given that the identity of the informer may soon be revealed at trial. At

the same time, if the informer is an intended witness, Defendant has a significant interest in obtaining the pretrial statements that the informer gave to enable Defendant to prepare to examine the informer at trial. Therefore, for any informer whom Plaintiff has included on her witness list, Plaintiff must remove informer's privilege redactions. This ruling applies to witnesses whom Plaintiff has listed both as "may call" and as "likely call." *See* DE 72-1 (Plaintiff's witness list).[2]

At this juncture, the Court does not order that informer's privilege redactions be removed for informers, if any, who are not included on Plaintiff's witness list. Those informers' interest in maintaining their anonymity remains. Defendant asserts that it has an interest in learning the identity of anyone who might support its defenses, and informers whom Plaintiff does not intend to call may be able to provide that support. However, the Court's understanding is that the vast majority of informers are Defendant's former workers—individuals likely included on Plaintiff's witness list and for whom the informer's privilege redactions must be removed. Even if those workers were not included on Plaintiff's witness list, Defendant knows the names of its former workers and was free to conduct discovery to obtain information from them to support its defenses. Should the identities of informers become an issue at trial, Defendant is free to move for a greater lifting of the informer's privilege redactions.

---

[2] The Court is aware that Defendant has moved to strike Plaintiff's witness list. *See* DE 72. That motion is pending before Judge Middlebrooks. The Court declines to stay its ruling pending a ruling on the motion to strike, given the imminence of the trial and Defendant's need to prepare for trial.

### III.     Plaintiff's Motion to Compel

Plaintiff raises two issues in her Motion to Compel.  First, Plaintiff contends that Defendant's document production is incomplete because the production does not include responsive internal emails.  Second, Plaintiff asserts that Defendant did not comply with the deadline to provide a list of the names and addresses of witnesses intended to be called at trial.  In turn, Defendant seeks sanctions against Plaintiff for failing to confer prior to filing the Motion to Compel.

**A. Internal Emails**

Plaintiff argues that Defendant's responses to her requests for production must include responsive internal emails.  DE 66 at 1–3.  By using the phrase "internal emails," the parties are referring to emails between Defendant's personnel excluding the service partners and agents.  Defendant maintains that Plaintiff previously agreed that Defendant's search for responsive documents would not include a search of internal emails and that Plaintiff now has withdrawn from that agreement.  DE 65 at 2–3.  During the May 7 hearing, Defendant represented to the Court that searching internal emails would take at least a few months.

On the topic of whether the parties had an agreement about searching internal emails, the Court has reviewed the communications that the parties cite and attach to their briefing to support their arguments that there was or was not an agreement about excluding internal emails from Defendant's search for responsive documents.  *See* DE 62-1; DE 65-1; DE 66-1.  The communications lack clarity on this point.  As an example of the lack of clarity, even now, the parties assign contradictory meanings to the *very same communications*.  *Compare* DE 65 at 3 ("Plaintiff subsequently stated to Defendant in a letter dated April 12, 2024 that she accepts the email production terms that are set forth in the March 21, 2024 letter, as well as the accompanying search report."), *with* DE 66 at 2 ("On April 12, 2024, the Secretary emailed a deficiency letter to

10

Arise, specifically requesting the production of emails pursuant to the internal and external ESI search methodology proposed in the Acting Secretary's March 6th and March 20th emails."). Based on the record before it, the Court cannot conclude that the parties had an agreement about searching internal emails.

The Court now turns to whether Defendant should search internal emails to complete its responses to Plaintiff's requests for production. The Court has considered the scope of discovery, *see* Fed. R. Civ. P. 26(b)(1)–(2), including the time and resources that would be required of an internal email search. The Court is also cognizant of the fact that Plaintiff did not file her Motion to Compel asking the Court to intercede in this issue until approximately two and a half weeks before the discovery deadline.

During the May 7 hearing, Plaintiff identified her first requests for production as the discovery requests for which she seeks responsive internal emails. *See* DE 37-1. The Court requires Defendant to produce internal emails, if any, that are responsive to the following request numbers in Plaintiff's first requests for production: 1 (documents Defendant consulted, reviewed, relied upon, or utilized to respond to interrogatories); 2 (documents Defendant was asked to identify in response to interrogatories); 3 (documents supporting Defendant's defenses and affirmative defenses); and 40 (documents Defendant produced in other litigation). The Court does not view responding to these request numbers as necessitating an expansive search. Further, several of Plaintiff's requests ask Defendant to produce "documents sufficient to" show, establish, or identify some matter. To the extent that internal emails are among the documents needed to show, establish, or identify the subject of the request, Defendant must produce internal emails responsive to the following request numbers: 32–34, 38–39, 44–47, and 50.

The Court will not require Defendant to produce internal emails responsive to the following request numbers, which relate to various policies of Defendant: 6–10, 16–19, 26, 28–30, and 36.

11

Further, the Court will not require Defendant to produce internal emails responsive to request number 35 (marketing strategies) or to request numbers 41, 43, 48, 52–55, and 57 (training materials and instructions). In so ruling, the Court has weighed the potential scope of a search against the need for responsive emails. The policies, marketing strategies, and training materials and instructions that are the subjects of these requests can be demonstrated through other types of documents, interrogatories, and/or deposition responses.

Finally, the Court does not construe the following request numbers as calling for a production of emails at all: 4 and 14–15 (contracts); 5, 37, and 51 (agreements); 11 and 42 (screenshots); 12–13 and 27 (statements of work); 20 and 22 (Partner Support documents); 21 (chat logs); 23–25 (transcripts); 31 (background checks); and 49 and 56 (payment records). Defendant need not produce internal emails responsive to those request numbers.

### B. Witness List

Plaintiff maintains that Defendant did not comply with the Scheduling Order's April 4 deadline to provide a list of the names and addresses of witnesses intended to be called at trial. DE 61 at 2–3; *see* DE 22 at 5 (Scheduling Order). Defendant responds that this dispute is moot because it provided a witness list on April 16. DE 65 at 2.

To the extent there may be any remaining dispute concerning the deadline to provide a witness list or any dispute concerning a party's ability to meet any other deadline in the Scheduling Order, those are not discovery disputes and are not referred to the undersigned Magistrate Judge. Issues concerning inability to meet pretrial and trial deadlines should be submitted to Judge Middlebrooks. Plaintiff's request for relief related to Defendant's witness list is denied without prejudice.

### C. Defendant's Sanctions Request

Lastly, Defendant asserts that Plaintiff failed to confer prior to filing her Motion to Compel, violating the Court's discovery procedures and warranting sanctions. *Id.* at 1–3; *see* DE 45 at 2 (Order Setting Discovery Procedures). The parties must comply with all of this Court's and Judge Middlebrooks' procedures and with all other applicable rules while litigating this case. At the same time, the Court recognizes that Plaintiff may have filed the Motion to Compel in haste, given the May 2 discovery deadline and given that the Court had already scheduled a discovery hearing. Further, the parties were communicating about a search of Defendant's internal emails at least as of March of 2024, and they were unable to reach agreement on the issue. Under these circumstances, the Court will not impose sanctions for the lack of additional conferral. Defendant's request for sanctions is denied.

### IV. Conclusion

For the foregoing reasons, the parties' Motions to Compel [DE 60; DE 61] are **GRANTED IN PART AND DENIED IN PART**. Absent the parties' agreement to an alternative date, the parties must amend their discovery responses in compliance with this Order within 7 days of the date of this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 17th day of May, 2024.

_____
PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE